AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

In the Matter of the Search of
Black LG Cell phone IMEI #355041614926140

Case No.    22-9196 MB

XRXeXXXaXteXXSXe#XXX

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

### As further described in Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### As set forth in Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _07-05-22_ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to any United States Magistrate Judge on criminal duty in the District of Arizona.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    6/21/2022@10:52am _____    *E.S.Willett*
_____
*Judge's signature*

City and state: Phoenix, Arizona _____    Honorable Eileen S. Willett, U.S. Magistrate Judge _____
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a black LG cellular telephone with IMEI ending x6140 (**Subject Cellular Telephone**). The **Subject Cellular Telephone** was the only telephone seized from 249 Dry Creek, San Tan Valley, Arizona, during the execution of residential search warrant No. 22-MB-5164. The **Subject Cellular Telephone** is currently located at 40 N Central Ave., Phoenix, Arizona.

This warrant authorizes the forensic examination of the **Subject Cellular Telephone** for the purpose of identifying the electronically stored information described in Attachment B.



**ATTACHMENT B**

*Property to be seized*

1.      Any records and information found within the digital contents of the **Subject Cellular Telephone** that relate to violations of 18 U.S.C. §§ 922(a)(1)(A), Dealing Firearms Without a License, and 924(a)(1)(A), False Statement in the Purchase of a Firearm, including:

      a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs and firearms;

      b.  all information related to buyers or sources of drugs and firearms (including names, addresses, telephone numbers, locations, or any other identifying information);

      c.  all bank records, checks, credit card bills, account information, or other financial records;

      d.  all information regarding the receipt, transfer, possession, transportation, or use of drug and firearm proceeds;

      e.  any information recording schedule or travel;

      f.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

      g.  contextual information necessary to understand the above evidence.

2.      Any records and information found within the digital contents of the **Subject Cellular Telephone** showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications;

subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>Black LG Cell phone IMEI #355041614926140 | Case No.   22-9196 MB<br><br>~~(Filed Under Seal)~~<br>~~XXXXXXXXXXXXX~~ |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

### As further described in Attachment A

located in the District of Arizona, there is now concealed:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. §922(a)(1)(A) | Dealing Firearms Without a License |
| 18 U.S.C. §924(a)(1)(A) | False Statement in the Purchase of a Firearm |

The application is based on these facts:

### See attached Affidavit of Special Agent Daniel Kolodziej

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Coleen Schoch

_Applicant's Signature_    #6395

Special Agent Daniel Kolodziej  ATF
_Printed name and title_

Sworn to before me and signed in my presence.

Date: ___6/21/2022@10:52am___

_Judge's signature_

City and state: Phoenix, Arizona

Honorable Eileen S. Willett, U.S. Magistrate Judge
_Printed name and title_

## ATTACHMENT A

*Property to be searched*

The property to be searched is a black LG cellular telephone with IMEI ending x6140 (**Subject Cellular Telephone**). The **Subject Cellular Telephone** was the only telephone seized from 249 Dry Creek, San Tan Valley, Arizona, during the execution of residential search warrant No. 22-MB-5164. The **Subject Cellular Telephone** is currently located at 40 N Central Ave., Phoenix, Arizona.

This warrant authorizes the forensic examination of the **Subject Cellular Telephone** for the purpose of identifying the electronically stored information described in Attachment B.



**ATTACHMENT B**

*Property to be seized*

1.      Any records and information found within the digital contents of the **Subject Cellular Telephone** that relate to violations of 18 U.S.C. §§ 922(a)(1)(A), Dealing Firearms Without a License, and 924(a)(1)(A), False Statement in the Purchase of a Firearm, including:

   a.   all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs and firearms;

   b.   all information related to buyers or sources of drugs and firearms (including names, addresses, telephone numbers, locations, or any other identifying information);

   c.   all bank records, checks, credit card bills, account information, or other financial records;

   d.   all information regarding the receipt, transfer, possession, transportation, or use of drug and firearm proceeds;

   e.   any information recording schedule or travel;

   f.   evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

   g.   contextual information necessary to understand the above evidence.

2.      Any records and information found within the digital contents of the **Subject Cellular Telephone** showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications;

2

subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

## <u>AFFIDAVIT IN SUPPORT OF SEARCH WARRANT</u>

Your Affiant, Daniel Kolodziej, being first duly sworn, hereby deposes and states as follows:

### I.   <u>INTRODUCTION AND AGENT BACKGROUND</u>

1.      Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine a black LG cellular telephone with IMEI ending x6140, and further described in Attachment A (hereafter **"Subject Cellular Telephone"**), and in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of violations of 18 U.S.C. §§ 922(a)(1)(A), Dealing Firearms Without a License, and 924(a)(1)(A), False Statement in the Purchase of a Firearm.

2.      Your Affiant, Daniel Kolodziej, is a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and has been so employed since March 2020. I am presently a member of ATF Phoenix Field Division Group II, Gangs and Violent Crimes. I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia, and Special Agent Basic Training for the ATF. As a Special Agent with ATF, I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. Prior to my employment with the ATF, I was employed by the Department of Homeland Security (DHS) where I worked as a Border Patrol Agent for one year. While at the DHS I received specialized training at FLETC in Artesia. As a Border Patrol Agent, I was empowered to enforce the immigration laws of the United States of America. As a Border Patrol Agent, I had regular dealings with tracking and apprehending illegal immigrants. Prior to my time as a Border Patrol Agent, I worked as a police officer for the towns of St. John (IN) and Dyer (IN) for eight years. As a police officer I regularly enforced Indiana State Laws and conducted investigations into a variety of calls for service. For the last five years of my career as a local police officer, I was assigned to the Northwest Regional SWAT team as

an operator on Entry Team One. As a SWAT Operator I was tasked with serving many high-risk arrest and search warrants. I have apprehended many dangerous criminals and responded to many barricaded situations with and without hostages.

3.      The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training and experience, information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers, and analysis of public records.

4.      Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## II.   BASIS FOR PROBABLE CAUSE

5.      In November 2021, SA Kolodziej was made aware of suspicious firearms purchases being made by Jae'Shawn RUTHERORD. From October 14, 2021, through November 17, 2021, RUTHERFORD purchased 14 known firearms of similar make and model and was associated with a firearm trace recovery in St. Charles, MO with a Time to Crime (TTC) of 29 days. Due to the suspicious nature of the firearm purchases, SA Kolodziej began to investigate RUTHERFORD.

6.      On February 9, 2022, at approximately 2:44 p.m., SAs Gibbons and Kolodziej responded to Avista Senior Living located at, 239 N. Robson Mesa, Arizona 85201. Upon arrival SA Kolodziej contacted RUTHERFORD via cell phone and advised he was in the North parking lot. A short time later, a man approached SA Kolodziej and advised that he was Jae'Shawn. SA Kolodziej recognized RUTHERFORD from his Arizona driver's license photograph. Prior to speaking with RUTHERFORD, SA Kolodziej activated his audio recording device in order to memorialize the interview. The recording was later entered into evidence and can be reviewed for further information.

7.      The following is a summary of the interview and is not verbatim. SA Kolodziej identified himself and SA Gibbons as ATF agents and asked if RUTHERFORD

had time to speak, RUTHERFORD said yes. SA Kolodziej asked RUTHERFORD if he was familiar with ATF and their mission. RUTHERFORD advised he was.

8.    SA Kolodziej asked RUTHERFORD if he worked at Avista, which he stated yes. SA Kolodziej inquired as to what his job was and asked how long he had been working at Avista. RUTHERFORD stated he had been working for Avista for approximately one year and advised he provided care for the residents of the senior living facility.

9.    SA Kolodziej asked RUTHERFORD if he owned any firearms, which he stated yes. SA Kolodziej asked RUTHERFORD if he had recently purchased any firearms, which he also stated yes. RUTHERFORD advised he buys firearms from local shops and then sells them at gun shows in the area for small profits. RUTHERFORD stated the last gun show he attended was in Ocotillo in January 2022.

10.    SA Kolodziej advised RUTHERFORD that one of the firearms RUTHERFORD sold, a Bushmaster, Carbon 15, S/N D10372, was recovered in the commission of a crime. SA Kolodziej asked RUTHERFORD if he remembered this firearm; he said no. SA Kolodziej asked if RUTHERFORD kept any records of the firearms he had sold; he said no.

11.    SA Kolodziej asked RUTHERFORD when he last purchased a firearm. RUTHERFORD stated he last purchased a firearm yesterday (February 8, 2022). SA Kolodziej asked what RUTHERFORD purchased and was informed it was a Taurus G2C. (Purchase records show that this was RUTHERFORD purchased a Taurus G2C (SN ACL577913) bought on February 8, 2022 from Arizona Firearms in Gilbert, Arizona.) SA Kolodziej asked about the other firearm that RUTHERFORD purchased on February 8, 2022. (Purchase records show that RUTHERFORD purchased another Taurus G2C (SN ACN735181) from DK Defense, in San Tan Valley, Arizona.) RUTHERFORD admitted to purchasing that firearm.

12.    SA Kolodziej asked RUTHERFORD how many firearms he currently had in his possession. RUTHERFORD stated three or four and added that he sold the rest at gun shows. SA Kolodziej advised RUTHERFORD of five additional firearms purchased

3

by RUTHERFORD on February 7, 2022 from Alpha Dog Firearms. RUTHERFORD acknowledged those firearms. Purchase records show that, on February 7, 2022, RUTHERFORD purchased the following firearms from Alpha Dog Firearms in Tempe, Arizona:

    a.  Ruger R-57  5.7x28mm      643-50121

    b.  Taurus     G3C  9mm        ACK452024

    c.  Taurus     G3C  9mm        ACN738299

    d.  Taurus     G3C  9mm        ACK452132

    e.  Taurus     G3C  9mm        ACN738144

13.    SA Kolodziej again asked RUTHERFORD how many of the seven firearms purchased in the last three days he still had in his possession. RUTHERFORD stated he had none of those firearms and advised he had sold all of them at gun shows. RUTHERFORD further stated he was in the process of procuring a Federal Firearms License (FFL) from Clik Clik Bang (an FFL located at 3233 E. Chandler Blvd, Unit 7, Phoenix, AZ 85048) so that he could start a business selling firearms. SA Kolodziej asked RUTHERFORD if he was a federal firearms licensee (FFL), which he stated no.

14.    SA Kolodziej asked what gun show RUTHERFORD went to, RUTHERFORD was unable to advise. SA Kolodziej explained to RUTHERFORD that honesty was imperative. SA Kolodziej advised he and SA Gibbons were being completely honest with RUTHERFORD and simply were seeking truthful answers. RUTHERFORD stated he had none of the guns he previously purchased and had not sold any of them at a gun shows.

15.    SA Kolodziej asked RUTHERFORD if he had purchased the firearms for someone else, RUTHERFORD said yes. SA Kolodziej asked RUTHERFORD if every firearm he purchased was on behalf of someone else, RUTHERFORD said yes.

16.    SA Kolodziej asked RUTHERFORD to explain the process of how he would buy firearms. RUTHERFORD stated he would call local gun shops to see what they had in stock. RUTHERFORD stated his friends would pick him up and drive him to the gun

4

shops as he does not have a car. RUTHERFORD stated he would exit the car, enter the store and proceed to purchase firearms. RUTHERFORD stated once he would get back to the vehicle with the firearms, he would receive approximately $100 per firearm purchased. SA Kolodziej asked what happens to the firearms after he hands them off to his friends, RUTHERFORD stated as soon as he gets into the vehicle the firearms are no longer in his possession.

17.     SA Kolodziej again asked RUTHERFORD for the name of the person for whom he purchased firearms. RUTHERFORD was hesitant to answer the question. SA Kolodziej advised RUTHERFORD for each firearm purchased, there is only one name attached. SA Kolodziej advised RUTHERFORD that he purchased at least 27 firearms, and each one recovered would be directly tied back to him. SA Kolodziej explained the importance of ATF Form 4473s and background checks, which RUTHERFORD advised he understood. SA Kolodziej again asked why RUTHERFORD was willing to take all the blame for the crimes knowing he was not acting alone. RUTHERFORD stated it was due to the fact he lived with that person. SA Kolodziej asked RUTHERFORD if it was his brother, he said no. RUTHERFORD eventually advised the man he was straw purchasing firearms for was his stepfather, BELL, with whom he lives.

18.     SA Kolodziej located a male with the last name of BELL associated with the address of 249 Dry Creek, San Tan Valley, Arizona. SA Kolodziej located a photo of BELL and provided it to RUTHERFORD. RUTHERFORD immediately advised that it was a picture of his stepfather, later identified as Rodrecas L. BELL, a Black Male, 5'05, 140 lbs. with brown eyes and black hair.

19.     SA Kolodziej asked RUTHERFORD if BELL was a prohibited person. RUTHERFORD advised he had seen BELL carry a firearm and seen BELL receive said firearm back from police after being traffic stopped.

20.     SA Kolodziej asked RUTHERFORD if he had informed BELL that he had been contacted by ATF, RUTHERFORD stated no. RUTHERFORD added that BELL was aware police were previously at his residence as they were seen on the Ring doorbell

camera. SA Kolodziej explained that it would be in RUTHERFORD's best interest to not tell BELL that he had talked to ATF. SA Kolodziej asked if BELL would be asking RUTHERFORD to purchase more firearms for him. RUTHERFORD stated yes, adding they were supposed to go today. SA Kolodziej asked RUTHERFORD how he and BELL communicated. RUTHERFORD stated he lives with BELL and therefore the majority of their communication is in person. RUTHERFORD further stated BELL would occasionally text him saying "Yo" and then call to avoid any text history.

21.     SA Kolodziej asked RUTHERFORD if there were any firearms in his residence. RUTHERFORD advised BELL has been known to carry a firearm but stated all the firearms he buys are distributed by BELL within days of the purchase. RUTHERFORD does not know where the firearms are distributed, as he only purchases them for BELL.

22.     On April 19, 2022, at 6:01 a.m., ATF SA served search warrant 22-516YMB, at 249 E. Dry Creek Road San Tan Valley, Arizona 85143. Upon knocking and announcing, ATF's entry team was met at the front door by BELL and several other individuals. All subjects were safely escorted from the residence so that ATF's entry team could compete a security sweep of the residence.

23.     After the residence was deemed safe, SAs Gibbons and Kolodziej spoke with BELL in private. SA Kolodziej introduced himself and SA Gibbons as a Special Agents with ATF. SA's explained to BELL he was not under arrest and asked if he would be willing to speak with investigators about their presence, BELL answered yes. SA Kolodziej asked BELL if he was familiar with ATF which he stated yes. SA Kolodziej asked BELL what his relation to RUTHERFORD was, he advised that RUTHERFORD was his stepson. BELL further advised that RUTHERFORD has not been staying at the residence for some time now. BELL stated that RUTHERFORD rarely stays at the house and advised he has not seen him for a few weeks.

24.     BELL advised that law enforcement had been to his house three times prior, all of which resulted in no fines or arrests. BELL stated he has bought and sold guns for the past few years and, as he understands, has not broken any laws.

6

25.    While speaking with BELL, agents asked where his cell phone was. BELL laughed and stated he did not know where the phone was. Agents subsequently located several phones within the residence and presented them to BELL. BELL subsequently informed Agents that the **Subject Cellular Telephone** was his.

26.    SA Kolodziej explained to BELL that ATF was investigating RUTHERFORD and came upon BELL's information as being involved. SAs informed BELL as to what RUTHERFORD had stated and asked BELL if he was having RUTHERFORD purchase firearms on his behalf. BELL stated no and instead offered his version of what was happening.

27.    BELL stated that he and RUTHERFORD have opioid addictions and are addicted to blues (Fentanyl pills are commonly referred to as "blues"). BELL stated that he would buy and sell firearms to support his addiction. BELL states that when he found out that RUTHERFORD had the same addiction, BELL showed RUTHERFORD how to buy and sell firearms to support his own needs. BELL stated that he cannot afford to pay for both his own and RUTHERFORD's drug habit, so he taught RUTHERFORD a way to make extra cash.

28.    BELL stated that over the past five years, he has bought and sold over 100 firearms. BELL stated that he would never purchase firearms at stores and instead buys them at gun shows and occasionally off the internet at sites such as Facebook marketplace, Backpage, and Gunbroker. BELL further advised that he would try to find firearms identified in "searching for" postings. BELL stated that he would then find that firearm at a gun show and would contact the person looking for the firearm. BELL stated he would make around $50 per gun. Agents asked BELL about how many times he had bought and sold a firearm for personal monetary gain. BELL stated he was unsure of the exact number but estimated at least 120 times over the past few years. Agents asked BELL how much money he had made buying and selling firearms. BELL was unable to advise.

29.    SA Kolodziej asked BELL how many firearms he thought RUTHERFORD had purchased; he advised around 20. Agents asked BELL if he had any bills of sale. BELL

stated he did not collect a bill of sale, just checked to see if the purchaser had an Arizona driver's license.

30.     Agents asked BELL if there anyone other than RUTHERFORD had purchased firearms for him. BELL stated no, anyone who buys a firearm with him buys it for themselves not for him.

31.     Agents asked BELL if anyone he had ever sold a firearm to a person who had told BELL that they were a felon. BELL stated no. BELL stated that he had been suspicious a few times: "such as when a dude calls but sends his girl to pick up the firearm," but as long as the buyer has an Arizona ID he does not care.

32.     BELL was asked how much he makes at his HVAC job. BELL stated he works contracts and advised does not make much as he does not work often. BELL stated that most of the money BELL makes is given to RUTHERFORD and the rest of his family.

33.     Agents asked BELL how RUTHERFORD got the money to purchase firearms. BELL stated that he loaned RUTHERFORD money but only took back what he loaned. BELL stated that what RUTHERFORD makes on his sales, RUTHERFORD keeps. BELL stated the most money he had ever given to RUTHERFORD was $1000. BELL was advised RUTHERFORD had made purchases of firearms for over $3,000, and asked how RUTHERFORD would have gotten that amount of money. BELL stated that he did not know.

34.     BELL continually stated that both he and RUTHERFORD suffer from an opiate addiction and that BELL used the money he made from selling firearms to support his addiction and eventually RUTHERFORD's addiction. BELL further stated that RUTHERFORD addiction became too expensive, which is when he showed RUTHERFORD how to make money selling firearms. BELL maintained he only made enough money to support his addiction and never made enough to spend elsewhere

35.     The **Subject Cellular Telephone** is currently in the lawful possession of ATF after being seized during the execution of the residential search warrant No. 22-MB-5164, issued by Magistrate Judge Fine on April 14, 2022. Therefore, while ATF might

already have all necessary authority to examine the device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the device will comply with the Fourth Amendment and other applicable laws.

36.    The **Subject Cellular Telephone** has remained in ATF custody since the time of its seizure on April 19, 2022. The **Subject Cellular Telephone** is currently being stored in the ATF Phoenix Field Division evidence storage vault, located at 40 N Central Ave, Phoenix, Arizona 85003. Based on your Affiants training and experience, I know that the **Subject Cellular Telephone** has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the **Subject Cellular Telephone** first came into the possession of the ATF.

## III.    ITEMS TO BE SEIZED

37.    Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the **Subject Cellular Telephone**.

38.    Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

a.    Firearms    traffickers    commonly    use    cellular    telephones    to communicate with other firearm traffickers and customers about firearm-related activities through the use of telephone calls, text messages, email, social media, and other internet- and application-based communication forums. Firearms traffickers commonly use other capabilities of cellular telephones to further their firearms trafficking and money laundering activities. Therefore, evidence related to firearm trafficking activity and money laundering activity is likely to be found on the **Subject Cellular Telephone**.

b.    As previously set forth in this Affidavit, the target of this investigation has used electronic storage media to send messages and to post advertisements regarding potential purchases and sales of firearms. By training and experience,

9

your Affiant also knows that telephones are commonly used to further firearms trafficking. Cellular telephones are the primary source of communication for firearms traffickers. Therefore, your Affiant believes that evidence of criminal activity, including information regarding straw purchasing by RUTHERFORD, information regarding straw purchasing by others on behalf of RUTHERFORD, and potential current locations of firearms that have traveled out of legal commerce into illegal commerce, will be found on **Subject Cellular Telephone**.

39.     In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the **Subject Cellular Telephone**.

## IV.   DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

40.     As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the **Subject Cellular Telephone**. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

41.     *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the **Subject Cellular Telephone** for at least the following reasons:

42.     Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of

Internet discussions about the crime; and other records that indicate the nature of the offense.

43.     Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

44.     Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

45.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

46.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and

when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the **Subject Cellular Telephone** because:

    a.    Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.    As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect.

For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

      c.    A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

      d.    The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

      e.    Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or

absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

47.   *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the **Subject Cellular Telephone**, including the use of computer-assisted scans.

48.   *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V.   CONCLUSION

49.   Your Affiant submits that there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 18 U.S.C. §§ 922(a)(1)(A), Dealing Firearms Without a License, and 924(a)(1)(A), False Statement in the Purchase of a Firearm, are likely to be found in the contents of the **Subject Cellular Telephone** described in Attachment A.

_____
Special Agent Daniel Kolodziej
ATF

Subscribed and sworn to before me telephonically this _____21_____ day of June, 2022.

_____
HONORABLE EILEEN S. WILLETT
United States Magistrate Judge

14